UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
JAN 16 2015
PER ____
DEPUTY CLERK

JEFFRY ROBBINS, :
Plaintiff :
v. : CIVIL NO. 3:CV-13-955
MS. LAMAS, et al., : (Judge Kosik)
Defendants :

**MEMORANDUM**

This civil rights action, pursuant to 42 U.S.C. § 1983, was initiated by Jeffry Robbins, an inmate confined at the State Correctional Institution at Dallas, Pennsylvania. Named as defendants are Marirosa Lamas, at the time Superintendent at the State Correctional Institution at Rockview ("SCI-Rockview"), and Jacqueline Motter, Warden of the Clinton County Correctional Facility ("CCCF"). The matter proceeds on an amended complaint. (Doc. 11.) Presently pending is a motion to dismiss filed by Defendant Lamas (Doc. 20), and a motion for summary judgment filed by Defendant Motter (Doc. 26). For the reasons that follow, both motions will be granted.

## I. Background

While confined at SCI-Rockview, Plaintiff claims that he was hired by

Sergeant Fetterman on July 1, 2011, for an unspecified prison job. In August of 2011, Plaintiff complained to Fetterman about his rate of pay. Although Fetterman stated he would take care of it, he never did. In September of 2011, Plaintiff met with Defendant Lamas and informed her of the situation, but she did nothing to help him. Plaintiff also spoke to two Unit Managers, Mr. Ghenzel and Mr. Pasquali, and both failed to remedy the situation. He then filed a grievance, but claims that it was found to be frivolous. He received the same response when he pursued the issue to "Camp Hill."

On March 2, 2012, Plaintiff alleges that he was fired from his job by Mr. Pasquali because he wrote to Camp Hill. On June 27, 2012, he was transferred to the Clinton County Correctional Facility. He states that when he arrived at CCCF, copies of his grievance slips were missing from his property.

From July of 2012 through February 11, 2013, Plaintiff began complaining about chronic headaches to the CCCF Medical Department. He claims that the medical staff did not know why he was getting the headaches, but refused to send him to an outside hospital. When Plaintiff made Defendant Motter aware of this issue, she refused to help. He claims that he was taken off of his pain medication for several weeks, and also that he made Motter aware of this matter. According to Plaintiff, he was not even provided with an aspirin, and experienced 7 migraines a day. He claims that he grieved these issues to Camp Hill, but they refused to help him. It appears

that he was housed at Clinton County for approximately 8 months when he was temporarily transferred back to SCI-Rockview, and thereafter to SCI-Dallas.

Plaintiff contends that the conduct of Defendants Lamas and Motter violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment. He seeks compensatory and punitive damages.

## II. Standards of Review

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Ashcroft v. Iqbal, 556 U.S. at 556. "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

**B. Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support

their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

## III. Discussion

### A. Defendant Lamas' Motion to Dismiss

Defendant Lamas seeks to dismiss the claims against her on the basis of Plaintiff's failure to state a viable claim against her under 42 U.S.C. § 1983. Two elements must be present in order to state a § 1983 claim: (1) the conduct complained of must have deprived the plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States; and (2) the conduct must have been committed by a person acting under color of state law. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 923 (1982); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). In addition, Plaintiff must demonstrate that each Defendant was personally involved in the alleged wrongful actions either by actual conduct, or knowledge of and acquiescence in the wrongful actions. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Defendants in "a civil rights action must have personal involvement

in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.2d at 1207. Thus, a mere linkage in the prison chain of command is not sufficient to demonstrate personal involvement.

In the instant case, Plaintiff claims that he complained to several people at SCI-Rockview, including Defendant Lamas, about his rate of pay at his prison job and that nothing was done to address his complaints. To the extent Plaintiff seeks to impose liability on Lamas as Warden of SCI-Rockview and her failure to remedy the decisions made by her subordinates with respect to his complaints, he seeks to impose liability under the theory of respondeat superior. As such, these claims will be dismissed.

To the extent Plaintiff seeks to impose liability on Lamas by alleging that she was aware of/acquiesced in a constitutional violation, based upon a complaint made to her about his rate of pay at his prison job, he also fails to state a claim. It is well-established that Pennsylvania inmates do not have a constitutional right to employment or to earn wages while incarcerated. See Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975); Fidtler v. Pennsylvania Dept. of Corrections, 55 F. App'x 33, 2002 WL 31648368 (3d Cir. Nov. 25, 2002). Moreover, the "law is well established . . . that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest." Bulger v. United States Bureau of Prison, 65 F.3d 48, 50 (5th Cir. 1995); see also Coakley v. Murphy, 884 F.2d 1218,

1221 (9th Cir. 1989)(holding inmates have no property interest in continuing in work-release program); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)(finding Constitution does not create a property interest in prison employment); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)(finding inmate's expectation of keeping job does not amount to a property interest subject to due process protections); Bryan, 516 F.2d at 240 (same).

As such, even if Plaintiff was alleging personal involvement on behalf of Defendant Lamas with respect to the issue of his rate of prison pay/continued prison employment, he fails to state a claim upon which relief can be granted.

In his reply brief, Plaintiff attempts to add new allegations and set forth claims of retaliation and inadequate medical care. He claims that he was transferred from SCI-Rockview to the CCCF in retaliation for filing a prison grievance regarding the "rate of pay" issue. He further appears to suggest that Lamas is somehow responsible for his lack of medical care at CCCF.

In responding to these arguments, the court first notes that Plaintiff cannot add factual allegations in his opposition brief. However, even if the court were to address any retaliation claim, any such claim is not directed at Defendant Lamas personally, but rather in her capacity as warden and superior to the individual against whom the claim is directed. Plaintiff alleges that it was Mr. Pasquali that had him "shipped" to CCCF. There are no allegations that Defendant Lamas had any involvement

whatsoever in the transfer. As previously set forth, respondeat superior cannot form the basis of liability under § 1983.

In addition, to the extent Plaintiff contends that Lamas is responsible for any denial of medical care at CCCF following his transfer there from SCI-Rockview, the complaint is completely void of any allegations that Lamas, as warden of a state institution, had any involvement with the medical care administered at the county facility. For these reasons, the motion to dismiss filed by Defendant Lamas will be granted.

**B. Defendant Motter's Motion for Summary Judgment**

In support of her motion for summary judgment (Doc. 26), Defendant Motter filed a supporting brief, a statement of material facts, and supporting evidentiary materials. (Docs. 27-29.) In opposing the motion, Plaintiff filed an opposition brief on October 1, 2014. He did not file an opposing statement of facts or evidentiary materials. On October 2, 2014, an order was issued directing Plaintiff to file his statement of material facts within fourteen (14) days responding to the numbered paragraphs set forth in the statement of material facts submitted by Defendant, as required by M.D. Pa. Local Rule 56.1. (Doc. 30.) He was advised that his statement of facts must include references to the parts of the record that support each of his statements, and that the failure to submit a responding statement of facts would result in the material facts set forth in Motter's statement to be deemed

admitted in accordance with Local Rule 56.1.

The relevant time period has expired, and Plaintiff has not submitted the required statement of facts and supporting evidentiary materials. As such, the facts as set forth by Defendant Motter are deemed admitted. The facts are as follows.

1. Undisputed Facts

Plaintiff was an inmate housed at the Clinton County Correctional Facility from June 27, 2012 to February 11, 2013. He arrived at CCCF as a temporary transfer from SCI-Rockview. (Doc. 11, Amended Compl., Sec. V, ¶ 8; Doc. 19 Answer, Sec. V, ¶ 8 and Doc. 28, Motter Aff., ¶ 9.) Defendant Motter was the Warden at CCCF during the time period Plaintiff was incarcerated there. (Doc. 11, Sec. III, ¶ 2; Doc. 19, Sec. III, ¶ 2 and Doc. 28, ¶¶ 1-2.) SCI-Rockview and SCI-Camp Hill are facilities within the Pennsylvania Department of Corrections. The CCCF is a county facility, not a state institution. (Doc. 28, ¶ 20.) Warden Lamas, Sergeant Fetterman and Mr. Pasquali hold positions in, or are employed by, SCI-Rockview, not CCCF. (Id., ¶ 21.)

Of the allegations contained in Plaintiff's amended complaint, only those set forth in paragraph 8 of Section IV "Statement of Claim" pertain to events which occurred during the time he was housed at the CCCF. All other allegations pertain to events which occurred during Plaintiff's incarceration at SCI-Rockview. (Doc. 28, ¶ 22.) In paragraph 8 of Section IV "Statement of Claim", Plaintiff asserts a

§ 1983 claim against Warden Motter based upon her alleged deliberate indifference to his medical needs. (Doc. 11, Sec. IV, ¶ 8.)

In 2012 and 2013, the CCCF had an established grievance procedure for inmates housed there who wished to grieve the conditions of their confinement. (Doc. 28, ¶¶ 4, 6; Doc. 28-1, Ex. A, Clinton County Correctional Facility – Inmate Grievance Procedures and Guidelines, Policy 100-13; Ex. C, Inmate Handbook.) In her position as Warden, Motter had possession, custody and control of the CCCF's records kept in the ordinary course of its business. Among the business records maintained by the CCCF are intake and discharge records, as well as grievance forms filed by inmates and the responses thereto. (Doc. 28, ¶¶ 7, 8, 10.) The business records of the CCCF reveal that during the time Plaintiff was housed there, he did not file a grievance related to his claim of inadequate medical care at the CCCF. (Id., ¶ 11.)

In 2012 and 2013, the CCCF maintained a Medical Department for the purpose of examining and providing medical care to inmates housed there. The Medical Department was staffed with medical professionals, including Licensed Practical Nurses, Registered Nurses, Physician's Assistants and an on-call Physician. (Doc. 28-1, Ex. B, Clinton County Correctional Facility Medical and Dental Services, Policy 200-16.)

During the time Plaintiff was housed at the CCCF, he made numerous visits

to the Medical Department seeking treatment for headaches. A treatment regimen was established for him which included monitoring his blood pressure and other vital signs, and prescribing medication for his headaches. (Doc. 28, ¶¶ 15-16; Doc. 28-1, Ex. E, Medical Records.) Plaintiff voluntarily refused to comply with the treatment regimen and to take the prescribed medication. On at least one occasion, Plaintiff stated that he did not want to take the prescribed medication, but wanted to be sent to a hospital. (Doc. 28-1 at 58, Progress Notes, 10/26/12 Entry.)

On or about January 16, 2013, less than one month before he was transferred back to SCI-Rockview from the CCCF, Plaintiff complained to Defendant Motter about his headaches, and that his medication had been taken from him. (Doc. 11, Sec. III, ¶ 2; Doc. 19, Sec. III, ¶ 2; Doc. 28, Motter Aff.¶ 17.)

On October 4, 2012, Plaintiff's medication had been taken from him due to his violation of the policies and procedures of the CCCF. (Doc. 28, ¶ 13.) In response to Plaintiff's inquiry, Motter investigated his complaint and, based upon the information provided by the Medical Department, sent him a Memo encouraging him to report to the Medical Department and to comply with its recommended treatment regimen. (Id., ¶¶ 16, 17; Doc. 28-1 at 92, Memo dated 1/17/13.)

Defendant Motter is not a physician or other medical professional. (Doc. 28, ¶ 18.) She relies upon the medical professionals in the Medical Department to

provide reasonable, adequate and necessary medical care to the inmates housed at the CCCF. (Id., ¶ 19.)

    2.    Discussion

Defendant Motter advances two arguments in support of her motion for summary judgment with respect to the claims against her. She first maintains that the undisputed record demonstrates Plaintiff's failure to exhaust his administrative remedies with respect to his claims as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e). She further argues that even if he had exhausted, the undisputed facts reveal that she was not deliberately indifferent to Plaintiff's medical needs.

Pursuant to the PLRA, 42 U.S.C. § 1997e(a) :

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this section, the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether

the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at

2387 (quoting Porter, 534 U.S. at 525.) Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

The undisputed evidentiary materials submitted by Motter reveal that CCCF had an administrative grievance procedure available to inmates who wished to grieve the conditions of their confinement. (Doc. 28-1at 1-9.) While Plaintiff alleges in his amended complaint that he exhausted his administrative remedies, it is clear when reviewing his allegations that they refer to the filing of grievances with respect to events occurring at SCI-Rockview, and not to incidents occurring at the CCCF. A review of the CCCF business records submitted by Defendant Motter demonstrate that Plaintiff did not file any grievances at CCCF pertaining to his claim that Defendant Motter was deliberately indifferent to his serious medical needs. (Doc. 28, ¶ 11.)

In his opposing Defendant's motion, Plaintiff argues that because the Warden responded to his inquiry, that this fulfills the exhaustion requirement. In support of his argument, he cites to language contained in Policy 100-13 that sets forth the grievance procedure at the CCCF. (Doc. 28-1 at 2-6.) Specifically, he cites to the language that "[t]he decision of the Warden regarding the appeal will be final." (Id.

at 6.)

Plaintiff's argument is rejected for the following reasons. The grievance procedure as set forth in Policy 100-13 sets forth the specific steps an inmate at the CCCF must follow in filing a grievance. He must submit his complaint on a grievance form, which can be obtained from any staff member. Following completion, he must then give the form to a staff member or forward it to the Shift Commander. If given to a staff member, the staff member signs the form, indicating the date and time of receipt, and immediately forwards it to the Shift Commander, who then takes action on the grievance. If the inmate is unsuccessful, he can then file an appeal with the appropriate Supervisor/Section Head. A grievance appeal investigator conducts an investigation within five (5) days, and provides a report and recommendation to the Warden. The Warden reviews the grievance appeal. Any decision by the Warden on the formal grievance filed by the inmate is final. (Id.)

In the instant case, there is no evidence whatsoever in the record that Plaintiff ever filed a formal grievance form and went through the required steps of the grievance procedure at the CCCF. In fact, in his complaint, Plaintiff merely alleges that he made Ms. Motter "aware of the issue" and "complained to [her]". He never states, and offers no evidentiary materials demonstrating that, he ever filed a grievance with respect to his claim. (Doc. 11, Amended Compl. at 5.)

For these reasons, it is clear that Plaintiff failed to exhaust the administrative remedies available to him at the CCCF, and as required by § 1997e. As such, summary judgment is warranted in favor of Motter on the claims raised against her in this action.

Even if Plaintiff had exhausted his claims, the undisputed facts clearly establish that Defendant Motter was not deliberately indifferent to any serious medical needs of Plaintiff. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See, e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006), particularly where it can be shown that significant medical

services were provided, but the prisoner is dissatisfied with the outcome of these services. Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since determinations remain a question of sound professional judgment. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3dCir. 1979).

In addition, it is well-established that for non-medical defendants, to fulfill the deliberate indifference element, Plaintiff must show that the non-medical prison official had reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating Plaintiff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer, 991 F.2d at 69. "If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands ... [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

In applying these principles to the undisputed facts in this case, it is clear that Defendant Motter is entitled to summary judgment with respect to Plaintiff's Eighth Amendment medical care claim. Approximately one month prior to his transfer back to SCI-Rockview from the CCCF, Plaintiff complained to Motter that he was

having headaches, and that his medication had been discontinued. He also claimed that medication had been taken from him. The record reveals that Plaintiff was being treated by the CCCF medical department for his headaches, but that the medication was taken from him, after it was discovered that Plaintiff was violating the rules by hoarding pills in his cell. (Doc. 28-1 at 34-35, 61.) In fact, he was issued a misconduct for this behavior. (Id. at 34.)

When Warden Motter contacted the medical department to inquire about the complaint Plaintiff made to her, she learned that he was not complying with the treatment regimen prescribed for him, and that his medication was stopped because he refused to go to the medicine cart when it was dispensed. The medical records reveal that Plaintiff also refused to have his blood pressure and other vital signs monitored. (Doc. 28-1 at 65, 70, 74, 76, 78, 80.) Motter thereafter sent Plaintiff a Memo urging him to comply with the Medical Department's prescribed treatment regimen and to go to the Medical Department the following week, as scheduled, so that he could be treated. (Id. at 92.)

The record clearly reveals that Plaintiff was receiving medical treatment from the Medical Department for his headaches and was being prescribed medication. (Id. at 40, 42, 57-63, 82.) The medical records also reveal that Plaintiff disagreed with his prescribed treatment regimen, stopped taking his medication, and demanded to be sent to a hospital. (Doc. 28-1 at 50, 58, 65, 74.) As previously set

forth, mere disagreement with the medical treatment being administered does not state a claim under the Eighth Amendment.

Moreover, Defendant Motter is not a physician or other medical professional. There is no evidence to suggest that she was in any way involved in prescribing a treatment regimen for Plaintiff, or in any decision to start or stop any of his medication. As a non-medical professional, she relied on the medical professionals at the CCCF that were treating Plaintiff to provide him with adequate medical care. See Durmer, 991 F.2d at 69.

For all of the above reasons, even if Plaintiff had exhausted his claims against Defendant Motter, she is entitled to summary judgment as a matter of law. An appropriate order follows.